PAUL A. HILDING, ESQ. (SBN: 110656)
JAMES H. PYLE, ESQ. (SBN: 224121)
HILDING LAW FIRM
501 W. Broadway, Suite 1760
San Diego, California 92101
Tel:    (619) 233-4200
Fax:   (619) 233-4211

CRAIG A. MILLER, ESQ. (SBN: 116030)
LAW OFFICES OF CRAIG A. MILLER
225 Broadway, Suite 1310
San Diego, California 92101
Tel:    (619) 231-9449
Fax:   (619) 231-8638

Attorneys for Plaintiffs
BOB HALLAM and LINDA HALLAM

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB HALLAM and LINDA HALLAM,<br><br>             Plaintiffs,<br><br>v.<br><br>GEMINI INSURANCE COMPANY, a Delaware corporation,<br><br>             Defendants. | Case No. 3:12-cv-02442-CAB-JLB<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:        October 9, 2015<br>Time:        N/A<br>Courtroom: 4C<br>Judge:       Hon. Cathy Ann Bencivengo<br><br>**PER CHAMBERS, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

Plaintiffs Bob and Linda Hallam hereby respectfully submit the following memorandum of points and authorities in support of their Motion for Partial Summary Judgment against Defendant Gemini Insurance Company ("Gemini"):

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................. 2

    A.    THE GEMINI POLICIES ....................................................... 2

    B.    THE UNDERLYING ACTION ............................................... 2

    C.    HADDENN'S TENDER OF DEFENSE AND GEMINI'S
          IMMEDIATE DENIAL OF COVERAGE ........................... 3

    D.    GEMINI KNEW IT HAD A DUTY TO DEFEND HADDENN ........ 4

    E.    THE HALLAMS OBTAIN A JUDGMENT FOLLOWING A
          DEFAULT PROVE UP ........................................................... 5

III. ARGUMENT ..................................................................................................... 7

    A.    GEMINI IS BOUND BY THE JUDGMENT AGAINST
          HADDENN ............................................................................. 7

    B.    AS HADDENN'S ASSIGNEE, THE HALLAMS ARE
          ENTITLED TO RECOVER "ALL COSTS" TAXED
          AGAINST HADDENN, INCLUDING THE ATTORNEY FEE
          AWARD, AND "ALL INTEREST" ON THE "FULL
          AMOUNT" OF THE JUDGMENT ........................................... 9

          1.    Gemini's Broad Supplementary Payments Coverage is a
               Function of its Duty to Defend, Making Indemnity
               Coverage Irrelevant to the Hallams' Recovery of Costs
               and Interest on the Judgment ....................................... 9

          2.    Because Gemini had a Duty to Defend, the Hallams, as
               Haddenn's Assignee, are Entitled to Recover All Costs,
               Including the Attorney Fee Award, and All Interest on
               the Full Amount of the Judgment ............................... 13

    C.    GEMINI DENIED HADDENN POLICY BENEFITS IN BAD
          FAITH AND CONTINUES TO ACT IN BAD FAITH IN
          THIS ACTION ....................................................................... 15

          1.    "Bad Faith" is Merely "Unreasonable" Insurer Conduct ......... 15

          2.    Gemini Denied Haddenn a Defense and Refused to Settle
               in Bad Faith ............................................................... 16

          3.    When Confronted with this Action, Gemini Doubled
               Down on its Bad Faith Conduct ................................. 22

    D.    GEMINI'S BAD FAITH ALLOWS THE HALLAMS TO
          RECOVER THE ENTIRE JUDGMENT WITHOUT REGARD
          TO INDEMNITY COVERAGE, AS WELL AS THEIR
          ATTORNEYS' FEES ............................................................. 23

1  IV. CONCLUSION ....................................................................... 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii
TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Cases**

*Acceptance Ins. Co. v. Syufy Enterprises,*
    69 Cal.App. 4th 321 (1999).........................................................................13

*Amato v. Mercury Cas. Co.,*
    18 Cal. App. 4th 1784 (1993)...................................................................16

*Amato v. Mercury Cas. Co.,*
    53 Cal.App.4th 825 (1997)................................................................2, 24, 25

*Archdale v. American Int'l Specialty Lines Ins. Co.,*
    154 Cal.App.4th 449 (2007).....................................................................21

*Austero v. Nat'l Cas. Co. of Detroit, Mich.,*
    84 Cal.App.3d 1 (1978)...............................................................................1

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,*
    5 Cal.4th 854 (1993)..................................................................................11

*Bosetti v. United States Life Ins. Co. in City of New York,*
    175 Cal. App. 4th 1208 (2009).................................................................15

*Brandt v. Superior Court,*
    37 Cal.3d 813 (1985)................................................................................25

*California State Auto. Asso. Inter-Insurance Bureau v. Warwick,*
    17 Cal. 3d 190 (1976)...............................................................................10

*Cathay Mortuary (Wah Sing), Inc. v. United Pacific Ins. Co.,*
    582 F. Supp. 650 (N.D. Cal. 1984) .........................................................23

*Clark v. California Ins. Guarantee Ass'n,*
    200 Cal.App.4th 391 (2011).....................................................................12

*Commercial Union Ins. Co. v. Ford Motor Co.,*
    599 F. Supp. 1271 (N.D. Cal. 1984) ........................................................21

*Continental Cas. Co. v. Phoenix Constr. Co.,*
    46 Cal.2d 423 (1956)................................................................................16

*Egan v. Mutual of Omaha Ins. Co.,*
    24 Cal.3d 809 (1979)................................................................................17

*Essex Ins. Co. v. Five Star Dye House, Inc.,*
    38 Cal. 4th 1252 (2006)..................................................................14, 15, 25

*Fid. Nat'l Fin. v. Nat'l Union Fire Ins. Co.,*
    Case No. 09-CV-140-GPC-KSC,
    2014 U.S. Dist. LEXIS 140030 (S.D. Cal. Sept. 30, 2014) ....................15

*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.,*
    148 Cal.App.4th 976 (2007).....................................................................12

*Gray v. Zurich Ins. Co.*,
   65 Cal.2d 263 (1966)................................................................2, 24

*Hamilton v. Maryland Casualty Co.*,
   27 Cal.4th 718 (2002)................................................................21

*Hand v. Farmers Ins. Exch.*,
   23 Cal.App.4th 1847 (2000)........................................................15

*Hertzberg v. Dignity Partners*,
   191 F.3d 1076 (9th Cir. 1999)....................................................10

*Horace Mann Ins. Co. v. Barbara B.*,
   4 Cal.4th 1076 (1993)................................................................16

*Incollingo v. Ewing*,
   474 Pa. 527 (Pa. 1977) ..............................................................10

*Ins. Co. of N. America v. Nat'l. American Ins. Co. of Calif.*,
   37 Cal.App.4th 195 (1995)..........................................................13

*Johansen v. California State Auto. Assn. Inter-Ins. Bureau*,
   15 Cal.3d 9 (1975)......................................................................21

*Kapelus v. United Title Guaranty Co.*,
   15 Cal. App. 3d 648 (1971)........................................................23

*Knott v. McDonald's Corp.*
   147 F.3d 1065 (9th Cir. 1998)..................................................11

*Marsical v. Old Republic Life Ins. Co.*,
   42 Cal.4[th] 1617 (1996)............................................................20

*Montrose Chem. Corp. v. Superior Court*,
   6 Cal. 4th 287 (1993)..............................................................5, 20

*Mutual of Enumclaw v. Harvey*,
   115 Idaho 1009 (Idaho 1989) ......................................................9

*Neal v. Farmers Ins. Exch.*,
   21 Cal.3d 910 (1978)..................................................................15

*Northwestern Mut. Ins. Co. v. Farmers Ins. Group*,
   76 Cal.App.3d 1031 (1978)........................................................15

*OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*,
   175 Cal.App.4th 183 (2009)......................................................16

*Pardee Construction Co. v. Insurance Co. of the West*,
   77 Cal.App.4th 1340 (2000)......................................................12

*Pershing Park Villas Homeowners' Ass'n. v. United Pac. Ins. Co.*,
   219 F.3d 895 (9th Cir. 2000)....................................................24

*Powerine Oil Co., Inc. v. Superior Court,*
 37 Cal.4th 377 (2005)......................................................................................11

*Prichard v. Liberty Mut. Ins. Co.,*
 84 Cal.App.4th 890 (2000).................................................................1, 11, 12, 13

*Pruyn v. Agricultural Ins. Co.,*
 36 Cal.App.4th 500 (1995)..................................................................................8

*River Valley Cartage, Co. v. Hawkeye-Security Ins. Co.,*
 17 Ill.2d 242 (Ill. 1959)....................................................................................14

*Safeco Ins. Co. v. Robert S.,*
 26 Cal. 4th 758 (2001)......................................................................................13

*Samson v. Transamerica Ins. Co.,*
 30 Cal.3d 220 (1981).......................................................................................1, 7

*San Diego Housing Commission v. Industrial Indem. Co.,*
 95 Cal.App.4th 669 (2002)..........................................................................12, 14

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,*
 78 Cal. App. 4th 847 (2000)........................................................................17, 18

*Silberg v. Cal. Life Ins. Co.,*
 11 Cal.3d 452 (1974)....................................................................................1, 15

*Spray, Gould & Bowers v. Associated Int'l Ins. Co.*
 71 Cal.App.4th 1260 (1999)..............................................................................17

*State Farm Ins. Co. v. Mintarsih,*
 175 Cal.App.4th 274 (2009)..............................................................................12

*State Farm Mut. Auto. Ins. Co. v. Jacober,*
 10 Cal.3d 193 (1973).......................................................................................12

*State of California v. Continental Ins. Co.,*
 55 Cal. 4th 186 (2012)......................................................................................11

*Stibal v. Carland,*
 381 N.W.2d 855 (Minn.Ct.App. 1986) ...........................................................10

*Tradewinds Escrow v. Truck Ins. Exch.,*
 97 Cal.App.4th 704 (2002)...............................................................................23

*United Servs. Auto. Ass'n. v. Alaska Ins. Co.,*
 94 Cal. App. 4th 638 (2001)...............................................................................8

*Vandenberg v. Superior Court,*
 21 Cal. 4th 815 (1999)......................................................................................13

*Waller v. Truck Ins. Exch.,*
 11 Cal.4th 1 (1995)..........................................................................................10

*White v. Western Title Ins. Co.*,
40 Cal. 3d 870 (1985)......................................................................2, 16, 21

*Wilson v. 21st Century Ins. Co.*,
42 Cal.4th 713 (2007)......................................................................15

**Statutes**

10 C.C.R. § 2695.1(a)(1) ...............................................................20

10 C.C.R. § 2695.5(b)......................................................................21

10 C.C.R. § 2695.7(b)......................................................................21

10 C.C.R. § 2695.7(d)......................................................................20

Civ. Code § 3289(b) ........................................................................16

Civ. Code § 695.020(a).....................................................................16

Code Civ. Proc. § 1033.5(a)(10)(A) .................................................15

Code Civ. Proc. § 685.010................................................................16

TABLE OF AUTHORITIES

# I. **INTRODUCTION**

This case arises from Gemini's persistent, wrongful refusal to defend Terry V. Johnson dba Haddenn Construction ("Haddenn") in the underlying construction defect action brought by the Hallams.  Haddenn was an additional insured under policies Gemini issued to Fred Gonzales Concrete, Inc. ("Gonzales"), the concrete subcontractor that did trenching and concrete work for the Hallams' home.  Gemini defended Gonzales, but despite knowing that Haddenn faced liability arising from Gonzales' work, and acknowledged in its claim notes that "**we probably owe the GC [Haddenn] a defense. . .,**" Gemini chose to breach its duty to defend and leave Haddenn to fend for itself.  Unable to afford the substantial cost of defending the case through trial, Haddenn resolved the matter by giving an assignment of rights against its insurers in exchange for a covenant not to execute against its assets, and allowed the Hallams to proceed with a default prove-up, a procedure endorsed by our Supreme Court in *Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220, 240 (1981).

By this motion, the Hallams seek to adjudicate Gemini's duty to pay "all costs taxed" and "all interest on the full amount of [the] judgment" entered, which arises under Gemini's supplementary payments coverage and is payable as "a function of the insurer's defense obligation, not its indemnity obligation." *Prichard v. Liberty Mut. Ins. Co.¸* 84 Cal.App.4th 890, 911-912 (2000).  This Court has already adjudicated Gemini's duty to defend, and accordingly its supplementary payments obligation is due and owing as a matter of law.

In addition, the Hallams seek summary judgment that Gemini's denial of coverage and subsequent misconduct constitutes "bad faith," which is simply "*unreasonable* insurer conduct." *Austero v. Nat'l Cas. Co. of Detroit, Mich.,* 84 Cal.App.3d 1, 26 n. 22 (1978).  Although bad faith is often an issue of fact, where, as here, the insurer misconduct is clear, it is appropriately adjudicated as a matter of law. *Silberg v. Cal. Life Ins. Co.*, 11 Cal.3d 452, 457 (1974).  Not only did Gemini repeatedly and wrongfully refuse to defend Haddenn even after it clearly knew it

owed the duty, it engaged in further bad faith conduct in this action, hiding documents and misrepresenting facts to the Hallams, and this Court, along the way. Because the duty of good faith and fair dealing does not cease once the coverage litigation commences, *White v. Western Title Ins. Co*., 40 Cal. 3d 870, 885-886 (1985), all of Gemini's misconduct, including its misrepresentations in this action, properly weigh in favor of summary judgment. As a result of Gemini's bad faith, the tort damages standard applies, and Gemini is liable for the entire underlying judgment, without the need to prove indemnity coverage. *Amato v. Mercury Cas. Co.*, 53 Cal.App.4[th] 825, 834 (1997) ("*Amato II*"). This rule arises not only from the greater breadth of tort damages, but also "to remove the insurer's incentive to strategically disavow responsibility for the insured's defense 'with everything to gain and nothing to lose.'" *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 280 (1966).

## II. <u>FACTUAL BACKGROUND</u>

**A.     THE GEMINI POLICIES**

Gemini issued to Gonzales a Commercial General Liability ("CGL") insurance policy, policy no. VCGP008833, with limits of $1 million for the May 11, 2004 to May 11, 2005 policy period (the "policy"). (Ex. 1, Pyle Decl. ("PD"), ¶3.) The policy's insuring agreement explicitly provides for a duty to defend. (Ex. 1, p. 7, sec. I.A, 1.a.) The policy also includes supplementary payments coverage, pursuant to which Gemini promised to pay: "with respect to . . . any 'suit' against an insured we defend . . . All costs taxed against the insured in the 'suit' . . . [and] [a]ll interest on the full amount of any judgment . . . ." (Ex. 1, p. 12.) As this Court previously concluded, Haddenn is an additional insured under the policy. (ECF 16, 9:8-12; ECF 81, 7:13-8:26.)

**B.     THE UNDERLYING ACTION**

The Hallams contracted with Haddenn to construct their home, and Haddenn subcontracted with others, including Gonzales, to perform work on the house. (Ex. 2; Johnson Decl., ¶¶3-4.) Gonzales was a concrete subcontractor that poured the

foundation for the home, and performed other work, including trenching work relating to the plumbing waste line. (Ex. 2; Ex. 3, 81:13-15; PD, ¶4.) Numerous problems arose in the course of construction, and on May 15, 2007, the Hallams sued Haddenn and its subcontractors, including Gonzales, in San Diego County Superior Court (the "underlying action"), and ultimately filed a second amended complaint. (Ex. 4; Request for Judicial Notice ("RJN") 1.) The Hallams' second amended complaint asserted numerous causes of action, including negligence and breach of contract. (Ex. 4.) The complaint levied broad allegations of property damage, including loss of use, as well as allegations of bodily injury. (Ex. 4, ¶56.)

**C.   HADDENN'S TENDER OF DEFENSE AND GEMINI'S IMMEDIATE DENIAL OF COVERAGE**

On or about July 9, 2007, Haddenn's then-counsel, George Rikos, tendered Haddenn's defense to Gemini. (Ex. 5; PD, ¶5.) The tender letter enclosed a copy of a Certificate of Insurance naming Haddenn as an additional insured, and explained that Gonzales had entered into a subcontract that required Haddenn to be named as an additional insured. (Ex. 5.) Gemini, through Vela Insurance Services, Inc. ("Vela"), wrongly denied coverage almost immediately, in a conclusory fashion, asserting there was no contract between Haddenn and Gonzales. (Ex. 6; PD, ¶6.) Despite denying coverage for Haddenn, Gemini agreed to defend Gonzales, and assigned Jampol, Zimet, Skane & Wilcox, LLP ("JZSW"). (Ex. 6.)

Rikos followed up by letter dated September 12, 2007, and Gemini then requested a copy of the Gonzales subcontract. (Exs. 7, 8; PD, ¶7-8.) Rikos promptly provided a copy of the subcontract as requested, with JZSW forwarding it to Gonzales by letter dated September 25, 2007. (Ex. 9, p. 140; PD, ¶9.) Gemini did not, however, rescind its coverage denial.

Bart Blechschmidt, Haddenn's new counsel, followed up again on October 26. (Ex. 10; PD, ¶10.) Despite having already received a copy of the subcontract, in an October 30 letter Gemini's claims adjuster, Robert Scrivner, again asserted no

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

contract had been provided. (Ex. 11; PD, ¶11.) Although Scrivner admits he received updates from JZSW and could have simply called and asked for the subcontract, he did not do so. (Ex. 12, 165:17-23, 173:6-13; Miller Decl., ¶2.)

Peter Gregorovic, another new Haddenn attorney, again followed up by letter dated January 16, 2008. (Ex. 13; PD, ¶12.) Scrivner again denied coverage, and yet again falsely asserted that Gemini had never received a copy of the subcontract. (Ex. 14; PD, ¶13.) Gregorovic responded by letter dated January 31, 2008, enclosing another copy of the Gonzales subcontract. (Ex. 15; PD, ¶14.) Gemini again did nothing.

Gregorovic followed up by letter dated August 4, 2008, reminding Gemini of its duty to address the claim within 40 days. (Ex. 16, p. 195, ¶3; PD, ¶15.) In spite of the reminder, Gemini delayed another three months before once again denying coverage. (Ex. 17, p. 213, last ¶; PD, ¶16.) This time, Gemini based its denial on the view that Gonzales had completed his operations before any damage had occurred, and thus the damages at issue supposedly could not have arisen from Gonzales' ongoing operations. (Ex. 17, p. 199, first full ¶.) The letter failed to even address the allegations of bodily injury. (*See,* Ex. 17.)

**D.    GEMINI KNEW IT HAD A DUTY TO DEFEND HADDENN**

Although Gemini refused to defend Haddenn, it did defend Gonzales and was kept abreast of the action though updates from JZSW. (Ex. 12, 164:15-165:23.) Accordingly, Gemini knew the Hallams asserted damage to their plumbing waste line caused by Gonzales' ongoing operations. Its claim notes, hidden by Gemini until after close of discovery, document this fact. (ECF 209-2, ¶¶5-7; Ex. 18, p. 239, 06/23/09 entry; PD, ¶17.)

While defending Gonzales, Gemini sought to shift some of the burden to Gonzales' other insurers, and on September 15, 2009 filed suit against Lexington Insurance Company ("Lexington") and North American Capacity Insurance Company ("NAC"). (Ex. 19; RJN 2.) In stark contrast to its handling of Haddenn's

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

claim, in seeking to recover money from Gonzales' other insurers, Gemini identified the plumbing issue as an item of damages from Gonzales' work, and repeatedly pointed out that the Hallams allegations "created a potential for coverage," the yardstick for the duty to defend.[1] (Exs. 20, 21, 264:27; PD, ¶¶18-19.) Scrivner, **the adjuster that denied coverage for Haddenn under the same facts, verified the responses under penalty of perjury.** (Ex. 21, p. 272.)

While Gemini was suing NAC and Lexington, it was also defending a coverage suit brought by Haddenn. (ECF 32-1; ECF 32-29, ¶1.) A July 16, 2009 claim file entry, made in the context of defending Haddenn's suit, candidly acknowledges Gemini knew it was in breach of its duty to defend: "It would seem that we should consider settlement as **we probably owe the GC a defense under Crawford.**" (Ex. 18, p. 238, 07/16/09 entry.) As admitted in deposition, the "GC" "would be Haddenn Construction." (Ex. 12, 177:14-15.) However, Gemini continued to refuse to defend Haddenn, and to misrepresent the facts, stating in a May 18, 2011 letter "we are not aware of any damage to work other than FGC's [Gonzales]," and that "there is no potential of liability caused by FGC's ongoing operations." (Ex. 22, p. 279, ¶2; PD, ¶20.) The letter was sent by Wollitz, the same attorney who had raised the plumbing issue to NAC and argued there was indeed a potential for liability, triggering its duty to defend. (Ex. 22; Ex. 21, 264:26-265:10.)

E.     THE HALLAMS OBTAIN A JUDGMENT FOLLOWING A DEFAULT PROVE UP

Throughout the underlying action, Haddenn's subcontractors settled out of the case. In some instances, the subcontractors' insurers demanded and obtained releases, such that not only was the insured subcontractor released from all claims in the underlying action, but the subcontractor's insurer was also released. (Butler Decl., ¶5.) As trial drew near, all of the subcontractors were settled out of the

---

[1] As discussed below, only a "bare potential" for coverage is necessary to trigger the duty to defend. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993).

action, and at the time of trial only the Johnsons and Haddenn entities remained. (Butler Decl., ¶6; Ex. 23, 295:6-296:9; RJN 3.)  Haddenn was no longer being defended by any insurance carrier.  (Johnson Decl., ¶5; Butler Decl., ¶6.)  Unable to afford the substantial cost of trial, Haddenn agreed to resolve the matter by allowing the Hallams to prove up damages unopposed in exchange for a covenant not to execute/assignment agreement.  (Ex. 24; Johnson Decl., ¶6.)

The Hallams proceeded to prove up damages on June 15, 2011 before the Honorable Ronald L. Styn.  (Ex. 23.)  Despite the default nature of the proceedings, Judge Styn still required that he "be directed to the specific evidence" to support the findings sought. (Ex. 23, 299:22-24.)  He further stated "I realize . . . there is no defendant here . . . but I have an obligation to require you to prove your case." (Ex. 23, 307:27-308:3.)  Consistent with that approach, Judge Styn said "I take this seriously" and repeatedly challenged the Hallams' counsel, requiring that he be directed to the specific evidence supporting their claims.  (*See, e.g.*, Ex. 23, 319:5, 305:17-19, 308:2-6, 309:28, *et al.*)

One of the first items Judge Styn addressed was the Hallams' negligence claim. (Ex. 23, 296:23-26.)  After having been directed to the evidence, Judge Styn specifically noted that "Exhibit 21, for example, sets forth sufficient evidence to satisfy the elements of negligence and damages" and was "satisfied that the Defendants were negligent and their negligence caused damages. . . ." (Ex. 23, 303:21-23, 308:7-8.)  Similarly, he held that "[o]n the breach of contract, I don't think there's any question that the Haddenn entities and Terry Johnson at least are liable for breach of contract because the work was not performed in accordance with the contract." (Ex. 23, 319:9-12.)

Having presided over the case, Judge Styn was familiar with its long history which factored into his ruling.  For example, with regard to attorney fees, he found the $350 per hour rate "well within the standard. . ." for someone with the experience of the Hallams' counsel, further stated he "personally witnessed the. . .

vigorous defense that was put on. . .," and found "that the attorneys' fees being sought of $1,836,939 through April 30th are reasonable." (Ex. 23, 325:19-326:2.)

Judge Styn also challenged the asserted damages, stating "I'm going to be more persuaded by the actual repair costs than by the estimate. . . ." (Ex. 23, 304:2-5) In some instances, he reduced claimed items of damages. For example, he reduced the delay damages, stating "I'm going to take the lower amount and award $376,000 for the fair market value of the lost rental value. . . ." (Ex. 23, 333:1-2.) Judge Styn also reduced the rental rate from $21,000/month, stating "I'm going to find that he should have been able to find something to rent for 15,000 a month." (Ex. 23, 335:14-17.) Judge Styn ultimately found against Haddenn on negligence and breach of contract theories, and awarded the Hallams $1,948,028.90 in attorney's fees, and $50,620.16 in litigation costs. (Ex. 25, p. 371; RJN 4.) The judgment further awarded $6,591,835.08 in cost of repair damages, offset by the amounts paid by the settling subcontractors. (Ex. 25, p. 371.)

## III. ARGUMENT

### A. GEMINI IS BOUND BY THE JUDGMENT AGAINST HADDENN

Although Gemini has previously implied the Hallams' judgment is unenforceable (ECF 195, 2:20-27), the Hallams obtained the judgment through a process expressly approved by the California Supreme Court: "Where the insurer has repudiated its obligation to defend, a defendant in the absence of fraud may, without forfeiture of his right to indemnity, settle with the plaintiff upon the best terms possible, taking a covenant not to execute." *Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220, 240 (1981) (*internal citations omitted.*) The insured has no obligation to inform the insurer of the impending trial, and no duty to put on a defense. *Id.* at 242. "When the insurer 'exposes its policyholder to the sharp thrust of personal liability' by breaching its obligations, the insured 'need not indulge in financial masochism. . . .'" *Id.* at 241.

> There is a sound reason why this should be so. The insurer not only
> had a right to participate in and to control the litigation, it had a duty
> to do so. An insurer which has wrongfully abandoned its insured
> should not be heard to complain or allowed to relitigate the trial
> court's judgment merely because the default or uncontested
> proceedings followed, and were related to, an agreement between the
> insured and the claimant.

*Pruyn v. Agricultural Ins. Co.*, 36 Cal.App.4th 500, 517 (1995).

In this instance, the agreement leading to the default prove up was negotiated after more than four years of bitter litigation. (ECF 5-5; Ex. 24, p. 363.) Further, Haddenn did not simply stipulate to a judgment. Rather, the judgment was the result of default proceedings, with Judge Styn conducting an independent adjudication of the facts, expressly acknowledging "I have an obligation to require you to prove your case." (Ex. 23, 308:2-3.) Consistent with that duty, Judge Styn challenged the Hallams' counsel on a number of issues, reducing claimed damages in some instances. (*E.g.*, Ex. 24, 333:1-2, 335:14-17.) "These circumstances necessarily involve significant independent adjudicatory action by the court, thus mitigating the risk of a fraudulent or collusive settlement between an insured and the claimant." *Pruyn*, 36 Cal.App.4th at 517. Thus, "[f]inal judgments entered under. . . these circumstances are binding on the insurer which has wrongfully abandoned its insured. . . ." *Id.*

The fact that the insurers that had participated in Haddenn's defense settled their named insureds, along with themselves, out of the action to leave Haddenn to face trial without a defense has absolutely no impact on the propriety of the judgment. "[W]hen a liability insurer denies coverage for a third party claim and abandons its insured, it relinquishes the right to object to the manner in which the claim is resolved by the insured or any other insurer providing coverage for the claim." *United Servs. Auto. Ass'n. v. Alaska Ins. Co.*, 94 Cal. App. 4th 638, 644 (2001). "A contrary rule would render the insured's right to settle meaningless in cases where an insurer denies liability." *Id.* Gemini is bound by the judgment.

**B.**      **AS HADDENN'S ASSIGNEE, THE HALLAMS ARE ENTITLED TO RECOVER "ALL COSTS" TAXED AGAINST HADDENN, INCLUDING THE ATTORNEY FEE AWARD, AND "ALL INTEREST" ON THE "FULL AMOUNT" OF THE JUDGMENT**

This Court has already adjudicated that Gemini had a duty to defend Haddenn.  (ECF 16; ECF 81.)  The necessary consequence of this ruling is that the Hallams, as Haddenn's assignee, are entitled, as a matter of law, to recover from Gemini "all costs" awarded against Haddenn (including attorney's fees) and "all interest" on the "full amount" of the judgment pursuant to Gemini's supplementary payments coverage:

> 1.      We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> . . .
>
> e.      All costs taxed against the insured in the "suit".
>
> . . .
>
> g.      All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.
>
> These payments will not reduce the limits of insurance.

(Ex. 1, p. 12.)  By its express terms, and as interpreted by California courts, this coverage is payable as part of Gemini's defense obligation.  Thus, as discussed in more detail below, the Hallams need not prove that any part of the judgment is actually covered in order to recover the full amount of the cost and interest award.

**1.      Gemini's Broad Supplementary Payments Coverage is a Function of its Duty to Defend, Making Indemnity Coverage Irrelevant to the Hallams' Recovery of Costs and Interest on the Judgment**

The purpose of supplementary payments coverage is to provide protection for insureds, who have contractually ceded to the insurer the right to control the litigation.  With regard to costs, "since the Company has the right to control the defense, including the power to refuse settlement, it should also bear the consequences of its case management decisions, including the consequence that the trial court may tax the opponent's costs against the insured." *Mutual of Enumclaw v. Harvey*, 115 Idaho 1009, 1012 (Idaho 1989).  If the insured were responsible for

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

costs, which under Code of Civil Procedure section 1033.5(a)(10) includes attorney fee awards, the insurer would not price into its litigation calculus the risk of a fee award. It would be free to engage in "scorched earth" tactics to avoid settling claims, with the insured unfairly bearing the risk of a substantial fee award.

Similarly, the insurer's promise to pay all interest on the judgment protects the insured in the event the insurer chooses not to promptly pay an adverse award. If the insured were responsible for the interest, an insurer's decision to undertake a lengthy appeal could foist substantial additional liability on the insured. In light of the "fact that the insurer is in control of the litigation, obligating the insurer to pay interest on the **full amount** of the verdict is the only means of giving realistic protection to the insured." *Incollingo v. Ewing,* 474 Pa. 527, 539 (Pa. 1977) (*emphasis added*.) Thus, the promise to pay the "full amount" of the interest gives "the insurer an incentive to discharge its obligation promptly." *Stibal v. Carland*, 381 N.W.2d 855, 857 (Minn.Ct.App. 1986).

"The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 18 (1995). In this instance, Gemini's policy explicitly promised broad protection to its insureds in exchange for giving it the right to control the litigation. It promised to pay with respect to "**any** suit. . . we defend. . . **All** costs taxed against the insured in the suit. . . [and] **All** interest on the **full amount** of **any** judgment. . . ." (Ex. 1, p. 12, *emphasis added*.) With regard to Gemini's use of "any," the California Supreme Court interprets "'any' to be broad, general and all embracing. . . the 'word 'any' means every. . . .'" *California State Auto. Asso. Inter-Insurance Bureau v. Warwick*, 17 Cal. 3d 190, 195 (1976). The Ninth Circuit is in accord. *Hertzberg v. Dignity Partners*, 191 F.3d 1076, 1080 (9th Cir. 1999) ("'any' means 'ALL - used to indicate a maximum or whole.' It certainly does not mean 'some.'")

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

With regard to Gemini's choice of the modifier "all," the California Supreme Court construed this term in the analogous phrase "**all** sums which the Insured shall become obligated to pay by reason of liability imposed by law. . . ." *State of California v. Continental Ins. Co*., 55 Cal. 4th 186, 193 (2012) (*emphasis added.*) In *State of California*, the insurers argued they were liable for only a pro-rata share of a continuing injury loss spanning several insurers' policy periods, stating "it would be 'objectively unreasonable' to hold them liable for losses that occurred before or after their respective policy periods." *Id*. at 199. The Supreme Court rejected the application of the "reasonable expectations" doctrine in light of the unambiguous "all sums" language, stating:

> the plain "all sums" language of the agreement compels the insurers to pay "all sums which the Insured shall become obligated to pay … for damages … because of injury to or destruction of property." (Ante, at p. 193.) As the State observes, "[t]his grant of coverage does not limit the policies' promise to pay 'all sums' of the policyholder's liability solely to sums or damage 'during the policy period.'"

*Id.* The Ninth Circuit agrees: "'all' is all-encompassing . . . [i]n short, 'all' means all." *Knott v. McDonald's Corp.* 147 F.3d 1065, 1067 (9th Cir. 1998). Insurers will use such a broad word "for that very reason--its breadth--to achieve a broad purpose." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4[th] 854, 868 (1993). As stated by this Court, "[i]f the policy language 'is clear and explicit, it governs.'" (ECF 16, 7:18, *quoting Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4[th] 377, 390-391 (2005).) Just like the broad "all sums" language in *State of California*, Gemini's unambiguous "all costs" and "all interest" language must also be accorded its plain meaning. *State of California*, 55 Cal. 4th at 199.

Consistent with its purpose, every California case construing supplementary payments coverage has held that the opening sentence promising payments for "any 'suit' against an insured we defend" makes the coverage payable as "a function of the insurer's defense obligation, not its indemnity obligation." *Prichard*, 84 Cal.App.4th at 911-912 (*review denied*, 2001 Cal. LEXIS 1082 (Cal., Feb. 14,

2001))("The policy, in essence, obligates the insurer to pay the *costs* in any lawsuit it *defends*"); *San Diego Housing Commission v. Industrial Indem. Co*., 95 Cal.App.4th 669, 691 (2002)(*review denied,* 2002 Cal. LEXIS 2474 (Cal. April 10, 2002)("The SPP obligation clearly arises out of the defense duty"); *Clark v. California Ins. Guarantee Ass'n*, 200 Cal.App.4th 391, 398 (2011)(*review denied*, 2011 Cal. LEXIS 13040 (Cal., Dec. 21, 2011))("Costs and interest are 'clearly linked' to the insurer's obligation to defend"); *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.,* 148 Cal.App.4th 976, 996 (2007) (*review denied,* 2007 Cal. LEXIS 6558 (Cal., June 20, 2007))("The liability for such supplementary payment is an integral part of the Golden Eagle defense burden"); *State Farm Ins. Co. v. Mintarsih*, 175 Cal.App.4th 274, 284 (2009) ("These provisions make the insurer's obligation to pay an award of costs against the insured dependent on the defense duty.")

Thus, "such [supplementary] payments (unlike the classic indemnification obligation but like defense costs), are **independent of actual coverage.**" *Prichard*, 84 Cal.App.4th at 913 (*emphasis added.*) This construction is entirely consistent with the purpose of the coverage, to protect an insured that has given up its right to control the litigation and must rely on Gemini's promise to pay "all costs" and "all interest" on "any judgment" entered in "any suit" it defends, particularly in light of its definition of "suit," which "means a civil proceeding in which damages because of. . . 'property damage'. . . are **alleged**. . .," as there is no requirement that such damages be proven to recover under the supplementary payments coverage. (Ex. 1, p. 12, *emphasis added.*) The coverage is payable upon showing the insurer had a duty to defend. *Prichard, supra*.

If Gemini had wished to limit this coverage only to costs and interest on the portion of judgments for which it had a duty to indemnify, as recognized by this Court it was required to state such limitation in "clear and unmistakable language." (ECF 16, 8:3-4, *quoting State Farm Mut. Auto. Ins. Co. v. Jacober,* 10 Cal.3d 193, 201 (1973).) Its failure to limit coverage in such a way "implies a manifested intent

1  not to do so." *Pardee Construction Co. v. Insurance Co. of the West*, 77

2  Cal.App.4th 1340, 1359-1360 (2000); *see also Acceptance Ins. Co. v. Syufy*

3  *Enterprises*, 69 Cal.App. 4th 321, 330-331 (1999).  It is a "fundamental principle

4  that in interpreting contracts, including insurance contracts, courts are not to insert

5  what has been omitted."  *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 764 (2001).

6  Thus, whether Gemini has a duty to indemnify any portion of the judgment is

7  completely irrelevant to its supplementary payments obligation.

8      **2.**    **Because Gemini had a Duty to Defend, the Hallams, as Haddenn's Assignee, are Entitled to Recover All Costs, Including the Attorney Fee**

9      **Award, and All Interest on the Full Amount of the Judgment**

10      In ruling that Gemini had a duty to defend Haddenn, and breached that duty,

11  this Court noted that the Hallams' complaint raised the potential for coverage, in that

12  "[a]s a general contractor, Haddenn could be vicariously liable for the negligence of

13  Gonzales, its subcontractor," and the Hallams alleged "that Gonzales may have

14  negligently backfilled a waste line trench, causing damage to plumbing work

15  performed by others or loss of use. . . ." (ECF 16, 3:28, 12:20-21,15:8-10.)

16      The Court in the underlying action found, *inter alia* that Haddenn was

17  "negligent" and that it breached the construction contract. (Ex. 23, 303:21-23; Ex.

18  25, 371:4-5.)  The Hallams' complaint alleged Haddenn breached the contract

19  through its negligent construction, including the work of Gonzales, which resulted in

20  property damage, including loss of use.  (Ex. 4, ¶¶40-41, 57-61, 82, 84.)  As our

21  Supreme Court has held, "the same act may constitute both a breach of contract and

22  a tort," and thus a claim for negligent breach of contract is covered under a

23  commercial general liability policy such as that at issue here.  *Vandenberg v.*

24  *Superior Court*, 21 Cal. 4th 815, 839-841 (1999).  In addition to awarding damages

25  for property damage and loss of use, the Court also awarded attorneys' fees, an

26  element of costs.  (Ex. 25, p. 371); Code Civ. Proc. § 1033.5(a)(10)(A).  Such fees

27  are recoverable as "costs" under Gemini's supplementary payments provisions as a

28

function of its duty to defend. *Ins. Co. of N. America v. Nat'l. American Ins. Co. of Calif.*, 37 Cal.App.4th 195, 206-207 (1995); *Prichard*, 84 Cal.App.4th at 912.

The provision allowing recovery of "[a]ll interest on the full amount of any judgment. . ." is "equally clearly linked" to the defense obligation in the same way as the costs provision. *San Diego Housing,* 95 Cal.App.4th at 691. Consistent with its plain language, the National Bureau of Casualty Underwriters has made clear that the broad language Gemini used was intended to avoid the errant "court cases [that] have held that an insurer's obligation to pay interest extends only to that part of the judgment for which the insurer is liable," and make it "entirely clear that all interest on the entire amount of any judgment, which accrues after entry of the judgment, is payable by the insurer. . . ." *River Valley Cartage, Co. v. Hawkeye-Security Ins. Co.*, 17 Ill.2d 242, 245-246 (Ill. 1959). Thus, the Hallams are also entitled to recover not only the attorney fees and costs awarded, but also post-judgment interest at the statutory rate on the full amount of the judgment, which began to accrue upon entry. Civ. Code § 3289(b), Code Civ. Proc. § 685.010; Civ. Code § 695.020(a).

As recognized by this Court, "[a]ctions for bad faith against an insurer have generally been held to be assignable. . . including claims for breach of the duty to defend." (ECF 16, 19:18-23, *quoting Essex Ins. Co. v. Five Star Dye House, Inc.,* 38 Cal. 4th 1252, 1263 (2006).) The Hallams, as assignee of Haddenn's rights against Gemini, are entitled to recover these costs and interest. *See, id.*; *Clark*, 200 Cal.App.4th at 397-398 (an assignment of rights permits recovery by third party under supplementary payments coverage.) It does not matter that Gemini refused to defend, as the supplementary payments coverage is "in no way dependent upon whether the insurer had actually defended its insured. . . ." *Id.* at 400-401.

The Hallams anticipate Gemini may argue that its supplementary payments obligation is somehow diminished by virtue of Haddenn's status as an additional insured. However, "once an omnibus [additional] insured invokes the policy's coverage, he is bound by the terms of the policy including those giving the insurer

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

the right to control litigation and settlement, and the relationship between him and the insurer is the same as that between the insurer and the named insured." *Northwestern Mut. Ins. Co. v. Farmers Ins. Group*, 76 Cal.App.3d 1031, 1043-1044 (1978). Thus, the reasons for the coverage apply with equal force to Haddenn, and the protections promised are the same. *Id.*

**C.    GEMINI DENIED HADDENN POLICY BENEFITS IN BAD FAITH AND CONTINUES TO ACT IN BAD FAITH IN THIS ACTION**

**1.    "Bad Faith" is Merely "Unreasonable" Insurer Conduct**

"The terms 'good faith' and 'bad faith, as used in this [insurance] context. . . are not meant to connote the absence or presence of positive misconduct of a malicious or immoral nature. . . ." *Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 921 fn. 5 (1978). "To fulfill its implied obligation [of good faith and fair dealing], an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests." *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 720 (2007). An insurer's denial of or delay in paying benefits gives rise to bad faith damages "if the insured shows the denial or delay was **unreasonable.**" *Id.* at 723 (*emphasis added.*) This is an **objective** standard, and there is "no requirement to establish *subjective* bad faith." *Bosetti v. United States Life Ins. Co. in City of New York*, 175 Cal. App. 4th 1208, 1236 (2009). Although the reasonableness of an insurer's conduct is often a factual issue, as this Court recently held "[i]n some instances, however, the evidence may demonstrate as a matter of law that the insurer breached the implied covenant." *Fid. Nat'l Fin. v. Nat'l Union Fire Ins. Co.*, Case No. 09-CV-140-GPC-KSC, 2014 U.S. Dist. LEXIS 140030, *109 (S.D. Cal. Sept. 30, 2014) (*citing Silberg*, 11 Cal. 3d at 457.)

As recognized by this Court, Gemini owes the Hallams a duty of good faith and fair dealing not only as assignees of Haddenn's rights, but also as Haddenn's judgment creditor pursuant to Insurance Code section 11580. (ECF 46, 11:9-13:1); *Five Star Dye House*, 38 Cal.4th at 1264; *Hand v. Farmers Ins. Exch.*, 23

Cal.App.4th 1847, 1858 (2000). The duty of good faith and fair dealing continues even during the coverage litigation. *White*, 40 Cal. 3d at 885-886. Gemini's misconduct in handling Haddenn's claim and its ongoing misconduct in this action show Gemini has acted unreasonably as a matter of law.

**2.** **Gemini Denied Haddenn a Defense and Refused to Settle in Bad Faith**

Gemini began its bad faith conduct almost immediately after Haddenn tendered its defense, denying coverage without investigation based on the false premise that there was no subcontract between Haddenn and Gonzales. (Ex. 6.) Its own underwriting file contained a copy of Haddenn's Certificate of Insurance date stamped December 14, 2004, consistent with Haddenn's assertion that "[a]s part of the subcontract requirements, your insured obtained an Additional Insured Endorsement naming Haddenn Construction as an additional insured." (Ex. 26; PD, ¶21; Ex. 5.) Even if Gonzales disputed the existence of the subcontract, and he did not,[2] "a disputed issue of fact, determinative of coverage, **establishes** the duty to defend." *Amato v. Mercury Cas. Co.*, 18 Cal. App. 4th 1784, 1790 (1993) ("*Amato I*" emphasis added); *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1085 (1993). This is true even "if the doubt relates to extent or fact of coverage, whether as to the peril insured against. . . **or the person or persons protected**. . . ." *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 437 (1956) (*emphasis added*.) This is because "the duty to defend arises when the insured *tenders defense* of the third party lawsuit to the insurer," and "the law will charge a party with notice of all those facts which he might have ascertained if he had diligently pursued the requisite inquiry." *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal.App.4th 183, 200 (2009). "Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim."

---

[2] Gonzales testified in his deposition that he contracted with Haddenn, and he did not have "any reason to lie. . ." and say there was no subcontract. (Ex. 3, 76:7-11, 77:21-23 .)

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*., 78 Cal. App. 4th 847, 879-880 (2000). "[A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 819 (1979). Gemini reflexively denied coverage without even bothering to ask Haddenn for a copy of the subcontract. (Ex. 6.) Having denied coverage without any meaningful investigation whatsoever, on grounds that were clearly wrong, Gemini acted unreasonably. *Shade Foods,* 78 Cal. App. 4th at 916.

Gemini continued to act in bad faith after Haddenn's counsel produced the subcontract in September 2007. (Exs. 8, 9.) Taking advantage of Haddenn's turnover in counsel, Gemini simply pretended that it never received it, and accordingly would not reevaluate its earlier denial until it received another copy. (Exs. 11, 14.) This sort of misconduct is expressly prohibited by the FCSP, which states that insurers "shall not persist in seeking information not reasonably required. . . ." 10 C.C.R. § 2695.7(d). Having already received the subcontract, an additional copy was not needed. These regulations were adopted "[t]o delineate certain minimum standards for the settlement of claims which, when violated knowingly on a single occasion. . . shall constitute an unfair claims settlement practice within the meaning of Insurance Code Section 790.03(h)." 10 C.C.R. § 2695.1(a)(1). Accordingly, they establish "prudent norms and customs, and standards of care." *Spray, Gould & Bowers v. Associated Int'l Ins. Co.¸* 71 Cal.App.4th 1260, 1271, fn. 10 (1999). Thus, violations of the FCSP "evidence the insurer's breach of duty to its insured under the implied covenant of good faith and fair dealing with its insured." *Shade Foods, supra*.

Even after it received a second copy of the subcontract in January 2008, Gemini's response was to simply do nothing. (Exs. 15, 16.) When Haddenn's counsel followed up yet again six months later on August 4, 2008, Gemini delayed another three months and then denied coverage. (Exs. 16, 17.) The FCSP requires

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

that insurers respond to communications "immediately, but in no event more than fifteen (15) calendar days . . . ."  10 C.C.R. § 2695.5(b).  The FCSP also states that "every insurer . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part."  10 C.C.R. § 2695.7(b). This inexcusable delay provides further factually indisputable evidence of bad faith. *Shade Foods,* 78 Cal. App. 4th at 916.

Gemini also denied coverage on grounds it knew were unreasonable, and continued to refuse to defend Haddenn even after it had documented in its claim file **"we probably owe the GC [Haddenn] a defense. . . ."** (Ex. 18, p. 238, 7/16/09 entry, *emphasis added.*)  Although the Hallams' complaint alleged covered bodily injury and property damage, Gemini denied coverage anyway, ignoring the bodily injury allegations entirely, and stating with regard to the property damage allegations that Gonzales' "operations were completed so no additional insured status inures to Haddenn . . . ."  (Ex. 17, p. 199.)  However, the Hallams' complaint did not specify when the property damage occurred.  (*See,* Ex. 4.) Indisputably, Gemini realized this at the time, advising Gonzales: "**Because the plaintiffs have not specified when the alleged damages occurred**, it is possible that one or more policies . . . may be implicated by the losses claimed."  (Ex. 27, p. 385, ¶1; PD, ¶22, *emphasis added*.)  This Court agreed: "the Hallams did not specify the character of the alleged property damage. . ." or "when the property damage or bodily injury occurred. . .," concluding the "lawsuit potentially sought damages from Haddenn within the coverage of the Gonzales policies."  (ECF 16, 15:2-12, 11:23-24.)

In addition, newly produced claim file documents, withheld by Gemini until they were ordered produced after close of discovery, reveal that Gemini knew all about specific items of property damage attributed to Gonzales, and that it knew it could not rule out that the damage was caused by Gonzales' ongoing operations. For example, a March 7, 2008 letter informs Gemini that the Hallams' Cost of Repair ("COR") includes "$62,439.00 to place a sealant over the interior concrete

slab." (Ex. 28, p. 393, ¶2; PD, ¶23.) Further, Gemini knew the issue was "whether Gemini can prove with indisputable evidence that there is no potential that Haddenn will face legal liability for any damages arising out of FGC's ongoing operations," that "[t]he underlying complaint is vague as to when any damages occurred," and as a result, there was "some risk to Gemini. . . ." (Ex. 29, p. 402, ¶2, PD, ¶24.)

Contrary to Gemini's prior representations to this Court (*e.g.,* ECF 5-1, 5:13-23; ECF 7, 2:19-20), Gemini's claim file was replete with discussions of Gonzales' liability for damaging the Hallams' plumbing waste line through negligent trenching and backfilling. A June 5, 2010 report to Gemini states that "Mr. Johnson testified that he has a specific recollection that your insured did the trenching in addition to the backfill for the main plumbing throughout the house." (Ex. 30, p. 406, ¶1; PD, ¶25.) A June 23, 2009 claim note entry admits Gemini's "[i]nsured was involved in the trenching and placement of sand for the waste pipes," and conceded "[i]t appears the insured has risk in this matter." (Ex. 18, p. 239.) Gemini knew that this "liability could be in the six to seven figure range." (Ex. 31, p. 412, ¶1; PD, ¶26.) May 21, 2010 and June 7, 2010 claim note entries further recognize the Hallams alleged "that some of the plumbing problems are our [insured's] fault" and "it is alleged the insured performed certain back fill operations that caused the loss." (Ex. 18, p. 230, 5/21/10 and 6/7/10 entries.)

Further, Gemini knew of evidence, in the form of witness testimony, that Gonzales had performed the work, with a June 23, 2010 claim file entry stating "Terry Johnson and a couple other subs indicate the insured did the work." (Ex. 18, p. 229, 6/23/10 entry.) Gemini also knew that despite the exclusion of trenching and backfill in Gonzales' proposal, "the contract has a change order for a trench . . ." and that Gonzales' denial of performing the backfill could not be trusted because "our insured has had memory problems in the past." (*Id*.) Gonzales had also admitted "he may have done work for the developer in this regard on subsequent projects." (Ex. 30, p. 407.) Accordingly, Gemini indisputably knew of facts

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

showing a "bare potential" that Haddenn faced liability for Gonzales' ongoing operations, triggering its duty to defend, and simply chose to ignore them. "An insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing." *Marsical v. Old Republic Life Ins. Co.*, 42 Cal.4th 1617, 1624 (1996).

Gemini's obstinate refusal to defend Haddenn stands in stark contrast to its efforts to recover money from NAC on the same facts. While Gemini refused to defend Haddenn, it trumpeted the plumbing damages, and the low bar to trigger the duty to defend, to NAC in its contribution suit. In response to a NAC interrogatory asking Gemini to "[i]dentify each and every allegation of damage in the Hallams' complaint that you contend is alleged to have been caused by Fred Gonzales Concrete," Gemini cited "paragraphs 36, 37, 46, 47, 48, 49, 50 and 51" and argued "[t]hese allegations triggered NAC's duty to defend as they created a potential for coverage." (Exs. 20, Ex. 21, interrogatory 2.) Not surprisingly, the Hallams cited a number of these paragraphs in their prior motion, and this Court held that paragraph 49 did indeed allege facts triggering Gemini's duty to defend. (ECF 16, 14:27-15:5.) NAC also asked Gemini "[i]f you are aware of damages claimed to be associated with the work of Fred Gonzales Concrete that are not alleged in the Hallams' Amended Complaint state each and every said item of damage?" (Ex. 20, 259:24-26.) Gemini responded "[i]t has been alleged that FGC's work may have resulted in damage to plumbing." (Ex. 21, 264:27.) Thus, Gemini was more than happy to raise the plumbing issue in its effort to recover money from NAC, despite feigning ignorance of the issue with respect to Haddenn. (Ex. 22, p. 279.)

In addition, Gemini expressly acknowledged in its claim notes that **"we probably owe the GC a defense**. . . ." (Ex. 18, p. 238, 7/16/09 entry.) This acknowledgement of a **probable** defense duty exceeds the "bare possibility" necessary to trigger the duty to defend. *Montrose*, 6 Cal.4th at 300. In Gemini's own words it had to defend unless it could "produce indisputable evidence showing

**MOTION FOR PARTIAL SUMMARY JUDGMENT**
3:12-cv-02442-CAB-JLB

no potential for coverage. . . ." (Ex. 29, p. 402, 2.) Gemini's continued refusal to defend even after it knew it owed the duty was patently unreasonable.

Gemini also unreasonably refused an opportunity to settle the claims against Haddenn within policy limits. (Ex. 32; Ex. 33, p. 417, ¶3; PD ¶¶27-28.) From even an early COR, Gemini knew that Haddenn faced liability exceeding $5.6 million. (Ex. 28, p. 416.) However, when presented with an opportunity to settle the claim for $1 million, it refused, asserting it owed no coverage obligations because the Hallams and Haddenn had settled with Gonzales. (Ex. 32, Ex. 33, p. 417, ¶3.) However, Gemini was well aware that "[t]he settlement did not include a waiver of Haddenn's additional insured claims. . . ." (Ex. 29, p. 396, last ¶.) "From the covenant of good faith. . . California courts have derived an implied duty on the part of the insurer to accept reasonable settlement demands on such claims within the policy limits." *Hamilton v. Maryland Casualty Co.,* 27 Cal.4th 718, 724 (2002). **"[T]he only permissible consideration** in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer." *Johansen v. California State Auto. Assn. Inter-Ins. Bureau*, 15 Cal.3d 9, 16 (1975) (*emphasis added.*) "The existence of a coverage dispute, however meritorious the insurer's position, is simply not a proper consideration in deciding whether to accept an offer to settle the claim against an insured." *Archdale v. American Int'l Specialty Lines Ins. Co*., 154 Cal.App.4th 449, 464-465 (2007). By refusing a reasonable settlement offer of ~1/6[th] of what Gemini knew was Haddenn's prospective liability, based solely upon a settlement it knew did not release Haddenn's additional insured rights, Gemini acted unreasonably as a matter of law. *Commercial Union Ins. Co. v. Ford Motor Co*., 599 F. Supp. 1271, 1275 (N.D. Cal. 1984).

### 3. When Confronted with this Action, Gemini Doubled Down on its Bad Faith Conduct

Despite its ongoing duty of good faith, *White*, 40 Cal. 3d at 885-886, Gemini has continued its unreasonable conduct in this action. Even with the overwhelming documentation of its knowledge of the plumbing waste line issue, Gemini falsely argued in its motion to dismiss that "plaintiffs do not allege that damages were caused by Gonzales' ongoing operations, or that there was any evidence of such damages," asserting there was no possibility of damage to the work performed by others because "the other components of the structure that Gonzales' work could have theoretically damaged would not have been constructed during Gonzales' ongoing operations. . . ." (ECF 4-1, 2:18-25.) It made the same knowingly false argument in opposition to the Hallams motion for partial summary judgment, again asserting that "[b]ecause FGC only worked on the foundation slab, there was no other property to damage while FGC was engaged in its operations." (ECF 5-1, 5:13-23; ECF 7, 2:19-20.)

In support of its disingenuous argument, Gemini coaxed its claims adjuster, Scrivner, to falsely state under oath "I was never presented with any evidence by Haddenn or anyone else that Haddenn faced liability to the plaintiffs in the underlying case on the basis of property damage which occurred during FGC's ongoing operations. . . ." (ECF 7-1, ¶8.) Not only does this statement attempt to mislead this Court by substituting an "evidence" standard for the "bare potential" standard, it simply is not true, as Scrivner himself had documented in his claim notes the existence of eyewitness testimony regarding Gonzales' backfilling of the plumbing waste line trench. (*E.g.,* Ex. 18, p. 229, 6/23/10 entry.)

Even after this Court held that "[e]ven if Gonzales only worked on the Hallams' foundation, it may have caused the Hallams property damage, bodily injury, or loss of use of tangible property," citing the plumbing waste line issue (ECF 16, 15:6-10), Gemini deceitfully continued to deny that possibility, reiterating

the same argument in its motion to vacate.  (ECF 23-1, 15:4-8.)  Gemini's

disingenuous argument and sham declaration constitute additional unreasonable

conduct supporting a finding of bad faith as a matter of law.

Underscoring the damaging nature of Gemini's stark documentation of its

own misconduct, its counsel did not disclose the existence of its claim notes in

discovery, but did secretly use them to prep its witnesses.  (ECF 209-1, 3:8-4:15.)

When the Hallams eventually discovered the notes, Gemini refused to produce

anything but a heavily redacted copy.  However, Gemini accidentally produced a

less-redacted copy to other parties in this action, which revealed Gemini had misled

about its claims of privilege, knew all about the plumbing waste line issue, and had

conceded that it probably owed Haddenn a defense.  (ECF 230-3, ¶¶3-4; ECF 230-

9.)  The Hallams' subsequent motion to compel cited the "smoking gun"

concession, and explained that Gemini's statement that "we should consider

settlement as we probably owe the GC a defense. . ." referred to settling Gemini out

of Haddenn's prior coverage suit.  (ECF 230, 9:20-23.)  Gemini flatly denied this,

and instead asserted the sentence "contemplated funding a settlement on behalf of

its named insured Gonzales. . . ."  (ECF 234, 6:26-7:8.)  However, the unredacted

claim notes Gemini has now produced reveal this denial is false, as the remainder of

the entry now revealed states "[w]ill check with CC [coverage counsel] to see if we

can **settle out Gemini**. . . ."  (Ex. 18, p. 238, 7/16/09 entry, *emphasis added*.)  This

false statement not only violates Rule 11, it reveals the lengths to which Gemini and

its counsel were willing to go to hide the incriminating concessions and was, at a

minimum, unreasonable.

**D.   GEMINI'S BAD FAITH ALLOWS THE HALLAMS TO RECOVER
THE ENTIRE JUDGMENT WITHOUT REGARD TO INDEMNITY
COVERAGE, AS WELL AS THEIR ATTORNEYS' FEES**

"In an interesting wrinkle of insurance law, default judgments are

recoverable without a showing of indemnity."  *Tradewinds Escrow v. Truck Ins.

Exch.*, 97 Cal.App.4th 704, 713, fn. 6 (2002).  "An insurer's wrongful refusal to

defend will automatically subject it to liability for both the costs of defense and any adverse judgment the insured suffers, even when the judgment was rendered on a theory not within the policy coverage." *Kapelus v. United Title Guaranty Co.*, 15 Cal. App. 3d 648, 653 (1971); *Cathay Mortuary (Wah Sing), Inc. v. United Pacific Ins. Co.*, 582 F. Supp. 650, 659 (N.D. Cal. 1984) (*quoting Kapelus*, noting that "California law is quite clear on the damages [the insured] may receive from the insurers.")  Thus, "[t]he general rule is long-settled in California that 'an insurer that wrongfully refuses to defend is liable on the judgment against the insured.'" *Pershing Park Villas Homeowners' Ass'n. v. United Pac. Ins. Co.,* 219 F.3d 895, 901 (9th Cir. 2000) (*quoting Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966).) "Where the wrongful refusal to defend is also unreasonable, it violates the covenant of good faith and fair dealing, and the insurer will be liable for consequential damages regardless of foreseeability." *Pershing Park, supra* (*citing Amato II*, 53 Cal.App.4[th] at 834.)  "It is no defense that the ultimate judgment against the insured is not necessarily rendered on a theory within the coverage of the policy." *Pershing Park, supra.*  This is because "[w]hen the insurer refuses to defend and the insured does *not* employ counsel and presents *no* defense, it *can* be said the ensuing default judgment is proximately caused by the insurer's breach of the duty to defend." *Amato II, supra.*  The California Supreme Court established this rule not only because "[h]aving defaulted such agreement the company is manifestly bound to reimburse its insured for the full amount of any obligation reasonably incurred by him," but also "to remove the insurer's incentive to strategically disavow responsibility for the insured's defense 'with everything to gain and nothing to lose.'" *Gray, supra,* at 280.

Gemini denied coverage in bad faith, and continued to deny coverage even after it concluded and documented in its claim file that "we probably owe the GC [Haddenn] a defense. . . ."  (Ex. 18 p. 238.)  Having unreasonably failed to defend its insured, it left Haddenn to fend for itself.  Unable to afford to defend the case

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

through trial, Haddenn negotiated the best resolution it could hope for, an assignment of rights in exchange for a covenant not to execute, a means of resolution expressly approved by the California Supreme Court. *Samson*, 30 Cal.3d at 240. Because Gemini acted in bad faith, the tort damages standard applies, and the entire judgment is recoverable as "a proximate result of its wrongful refusal to defend." *Amato II*, 53 Cal.App.3d at 831. Gemini's policy limits are irrelevant to this recovery. *Id.* at 834.

In addition, as a result of Gemini's bad faith conduct, attorneys' fees incurred to recoup damages are recoverable. *Brandt v. Superior Court*, 37 Cal.3d 813, 817 (1985). The Hallams, as Haddenn's assignees, are entitled to recover the fees. *Five Star Dye House,* 38 Cal. 4th at 1263.

## IV.  CONCLUSION

For all of the foregoing reasons, the Hallams respectfully request that this Court grant their motion for partial summary judgment and find that: (1) Gemini has a duty to pay the Hallams $1,998,649.06 in costs awarded by the judgment; (2) Gemini has a duty to pay the Hallams all interest on the full amount of the judgment that has accrued and continues to accrue; (3) Gemini has acted in bad faith; (4) the Hallams are entitled to recover the entire principal amount of the judgment, $9,700,770.75, as consequential damages; and (5) Hallams are entitled to recover their attorneys' fees.

Respectfully submitted,

DATED:  August 21, 2015                **HILDING LAW FIRM**

By:  _s/ Paul A. Hilding_
Paul A. Hilding, Esq.
James H. Pyle, Esq.
Attorneys for Plaintiffs
BOB and LINDA HALLAM
hilding@hildinglaw.com
jpyle@hildinglaw.com